**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Eugene D. GATEWOOD,**
**Defendant-Appellant.**

**No. 82–2537.**

United States Court of Appeals,
Tenth Circuit.

May 7, 1984.

Rehearing Denied May 25, 1984.

Vicki Mandell-King, Asst. Federal Public Defender, D. Colo., Denver, Colo. (Michael G. Katz, Federal Public Defender, D. Colo., Denver, Colo., with her on the brief), for defendant-appellant.

William G. Pharo, Asst. U.S. Atty., D. Colo., Denver, Colo. (Robert N. Miller, U.S. Atty., D. Colo., Denver, Colo., with him on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, McKAY, Circuit Judge, and MECHEM, Senior District Judge.*

MECHEM, Senior District Judge.

Eugene D. Gatewood appeals from his convictions on two counts charging mail fraud in violation of 18 U.S.C. § 1341. The district court approved defendant's waiver of jury trial, and tried the case without a jury. Appellant was acquitted on a third count charging him with knowingly making a false material declaration in violation of 18 U.S.C. § 1623. Gatewood argues on appeal that the evidence was insufficient to

---

* Edwin L. Mechem, Senior District Judge, United States District Court for the District of New Mexico, sitting by designation.

sustain the convictions of mail fraud. We affirm.

### I.

■ Our consideration of the issue raised on appeal is limited to determining whether the verdict of the court is supported by the evidence. We must view the evidence, and reasonable inferences drawn from it, in the light most favorable to the prosecution. *United States v. Dinneen*, 463 F.2d 1036, 1038 (10th Cir.1972); *Seefeldt v. United States*, 183 F.2d 713, 715 (10th Cir.1950). In accordance with this standard, the evidence shows the following.

On the evening of February 12, 1979, Gatewood contacted the Denver Police Department and reported that his residence had been burglarized sometime during the previous weekend while he and his family were out of town. Police officers investigating the burglary found that the cover of the electric garage door opener had been pried open, and that the wires had apparently been crossed, thus opening the garage. The lock on a door leading from the garage to the kitchen had been sprung with a screwdriver. Most of the furniture had been removed from inside the house, and a set of dual wheeled tire tracks was observed in the garage. It appeared to Officer Costigan, an investigating detective who testified at trial, that the house had essentially been "cleaned out". A neighbor of the Gatewood's had told him that she had observed a U-Haul truck parked in the Gatewood's driveway during the weekend and had seen a man in painter's clothing going to that truck. Gatewood reported to the police that over $15,000 worth of property, including furniture, clothing, jewelry and camera equipment, had been stolen.

Equitable General Insurance Company (Equitable) had issued a homeowners insurance policy on November 19, 1976 to Mr. and Mrs. Gatewood for their residence. The policy was renewed for the period from November 19, 1978 through November 19, 1979. Gatewood submitted a claim to Equitable for payment for the property stolen in the burglary. In furtherance of his claim, Gatewood mailed an envelope to Equitable which contained a handwritten list of property taken, receipts, canceled checks and photographs. The envelope was postmarked March 5, 1979, Denver, Colorado, and was received by Equitable in Fort Worth, Texas on March 6, 1979. Equitable received a second envelope from Gatewood on May 2, 1979 which contained a completed sworn statement in proof of loss claiming $25,334.48 under the policy.

Much of the testimony at trial concerned receipts included in the first envelope mailed by Gatewood to Equitable. The receipts were from stores in the Denver area, including the Denver Dry, May D & F, Gart Brothers, and Waxman's Camera Store. Representatives from these businesses testified that they could not find store copies of many of the receipts Gatewood submitted to the insurance company. A receipt from Gart Brothers was from a receipt book reported missing in June, 1977. A sales clerk from Gart Brothers testified that although her name appeared on a receipt for a camera, she did not sell the camera to Gatewood, had no recollection of him, and that the handwriting on the receipt was not hers. It appears that many of the "duplicate receipts" were given to Gatewood by sales clerks relying on Gatewood's representations as to the items purchased and the amount and date of purchase. In many instances, the sales clerks did not check for store copies of the original receipts reflecting the actual sale before giving Gatewood the "duplicates".

A representative from Diner's Club testified that one of the charge slips Gatewood mailed to Equitable in the first envelope was for a charge submitted by Meek's Luggage to Diner's Club, which they paid. Gatewood included a second copy of the same charge slip in his first mailing to Equitable. On the second copy, he had written "Uniroyal Tire Co." over "Meeks" and submitted it as evidence of a tire purchase.

A representative from the First National Bank of Denver produced, from the bank's

records, a microfilm copy of check No. 1042 drawn on Gatewood's account. The microfilm copy shows that when the check was cashed, the "For" line in the lower left-hand corner contained only the word "Trip". However, this word was altered to read "TV Trinitron Purchase" on the actual check submitted to Equitable as proof of a television purchase.

A United States Postal Service handwriting expert testified that, in his opinion, Gatewood wrote the words "Uniroyal Tire Co." and "V.W. Tires" on the Diner's Club charge slip. His opinion was that Gatewood wrote all the handwritten portions of four receipts from the Denver, two Gart Brothers receipts, one from May D & F, and everything except the date on one from Robert Waxman Camera Co. He also testified that, in his opinion, Gatewood probably wrote everything on another receipt from the Denver, and that some of the handwriting on two other receipts was Gatewood's. Finally, he testified that the entire check No. 1042 was overwritten so that the alteration in the lower left-hand corner would match the remainder of the ink on the face of the check.

Appellant's wife and sister and a friend each testified regarding the discovery of the burglary, Gatewood's ownership of items claimed as lost in the burglary, and the method of obtaining duplicate receipts for such items. A Meeks' employee testified that she wrote out two duplicate receipts from a dummy receipt book for Gatewood based on what he had told her, and without checking for original receipts.

Gatewood testified in his own behalf. He stated that he was continuously insured by Equitable under the homeowners policy from November, 1976 until November, 1979. After the burglary, he and his wife went to various stores to obtain duplicate receipts for insurance purposes. In this process, he often filled out all or part of the receipts with information supplied by himself or the sales clerks. He wrote "hold for pickup tomorrow", "take", or "paid" on some of the receipts reflecting his memory of the original transactions involved. He didn't know why he wrote "Thank you" on a Gart Brothers receipt.

Gatewood admitted writing "Uniroyal Tire Co." on the Diner's Club charge slip. He stated that when he found the slip in his records, he thought the amount $96.92 on the slip reflected the cost of VW tires and balancing, but submitted only a claim for $80.00 for the cost of the tires.

The appellant also admitted that he wrote "TV Trinitron Purchase" over the word "trip" in the lower left-hand corner of check No. 1042, and that he wrote over the other writing on the check. He stated that the check had been cashed to pay for a television, but couldn't explain why the check originally showed that the money was for a trip.

At the conclusion of the trial, the trial judge found the defendant guilty of Counts I and II charged in the indictment, and not guilty of Count III. From the discussion between the trial judge and counsel at the end of trial, it is evident that the judge found that check No. 1042 was a fraudulent document supporting a false proof of loss submitted by the defendant to the insurance company on March 5, 1979. It is also apparent that the conviction as to Count II was sustained on the basis of the mailing of a false sworn proof of loss to Equitable on April 30, 1979. Defendant was acquitted of making a false material declaration in the civil proceeding between himself and the insurance company.

## II.

Appellant first argues that the indictment charged Gatewood with a scheme to defraud, which included the purchase of an insurance policy, the faking of a burglary, the claims for items not in fact owned by Gatewood, and submission of documents purporting to be original receipts for items purchased. He correctly points out that the trial court found that the United States had failed to establish that purchase of the insurance policy or a contrived burglary was a part of the scheme to defraud as charged in ¶¶ 2 and 3 of the indictment. Rather, the court found that the scheme

included only Gatewood's knowingly submitting false and fraudulent documents to Equitable in order to obtain acceptance of his proof of loss from the insurance company, as charged in ¶¶ 4 and 5 of the indictment.

Appellant recognizes that the government need not prove every allegation of fraudulent activity in an indictment. *U.S. v. West,* 549 F.2d 545, 552 (8th Cir. 1974), *cert. denied* 430 U.S. 956, 97 S.Ct. 1601, 51 L.Ed.2d 806 (1974). However, he argues that in making a distinction between a false loss and false proof of loss, and finding the defendant guilty on the basis of the false proof of loss only, the trial court excused the government from its burden of proving a scheme and specific intent to defraud. This argument is similar to the appellant's claim of a fatal variance between the indictment and the evidence presented in *U.S. v. West, supra.* In that case, one of the defendants was found guilty of one scheme to defraud, and not another, of two schemes charged in the indictment. In rejecting the variance claim, the court said:

> We agree with the government that [appellant's] argument is tantamount to an assertion that it was necessary to prove each and every element of the alleged scheme. It is settled doctrine, however, that the government is not required to prove all the elements. 'A scheme to defraud is necessarily made up of numerous elements. No particular element need be proved if sufficient is shown to constitute the scheme to defraud.' [Citations omitted.]

*Id.* Appellant here does not contend that he was inadequately informed of the nature of the charges against him. *See id.* Rather, he contends that the government was required to prove both a false loss, as well as a false proof of loss. He relies on *U.S. v. Miller,* 715 F.2d 1360 (9th Cir.1983).

*Miller* appears, at first glance, to be persuasive support for Gatewood's argument. In that case, the defendant was indicted on the basis of a scheme to defraud consisting of both an inflated claim and a knowing consent to a burglary. On appeal, the government conceded that it did not prove that Miller knew of or consented to the burglary. The court found that Miller's conviction was predicated on the false or inflated proof of loss only, and thus on a substantially narrower scheme than that pleaded in the indictment. The court agreed with Miller's argument that "to the extent the government did prove mail fraud, it did so on a theory so different than that pleaded in the indictment that Miller's conviction cannot be sustained." *Id.* at 1362. Miller's conviction was reversed "because he was convicted of offenses not only for which he was not indicted but also for which [the court could not say] that he would have been indicted." *Id. See also U.S. v. Mastelotto,* 717 F.2d 1238 (9th Cir.1983).

*Miller, supra,* is a different case than the one presented here. Paragraph 3 of the indictment returned against Gatewood states:

> 3. It was part of the scheme to defraud that EUGENE D. GATEWOOD submitted a claim to the Equitable General Insurance Company against the aforementioned homeowner's insurance policy to collect for property he alleged was stolen in a burglary of the insured residence, which was alleged to have occurred on or about February 12, 1979.

This language does not specifically charge the defendant with contriving a false burglary as part of the scheme to defraud. In contrast, the indictment in *Miller* charged:

> 6. It was a further part of the scheme that defendant knew that the alleged burglary was committed with his knowledge and consent for the purpose of obtaining the insurance proceeds.

715 F.2d at 1361. Based on the principle that every element of a scheme need not be proved and on our review of the record, we conclude that substantial evidence was presented to establish that defendant devised a scheme to defraud the insurance company as charged in the indictment.

■ Gatewood also argues that no specific intent to defraud can be found from the evidence because the court exclusively relied on the alteration of check No. 1042. Intent may be inferred from conduct and circumstantial evidence, upon which reasonable inference may be based. *U.S. v. Curtis*, 537 F.2d 1091 (10th Cir.1976). Our review, limited by the applicable standard and without weighing the evidence or testing the credibility of the witnesses, satisfies us that there is sufficient evidence in the record, including alteration of the check, to sustain the verdict. Appellant's contention that the check was the only evidence relied upon by the trial court is without merit.

■ Appellant next argues that the mailing of the sworn proof of loss is insufficient to sustain his conviction as to Count II, since the document reflects only the total amount of his claim, all necessary documentation had previously been sent and none was attached to the proof of loss statement, and because the second mailing was in response to a request made by the insurance company. It is not necessary that the item mailed show on its face that the item was mailed in furtherance of the scheme. *U.S. v. Curtis, supra,* at 1095. The separate mailing was in furtherance of the scheme to defraud, and may properly support the second conviction under Count II.

■ Finally, Gatewood argues that the record clearly demonstrates that he acted in good faith in submitting his claim for items stolen in the burglary, and that such operates as a complete defense to the charge of mail fraud. *See U.S. v. Westbo,* 576 F.2d 285, 288 (10th Cir.1978). Good faith is the obverse of bad motive or intent to defraud. Some courts have treated issues of good faith and intent to defraud as synonymous. *Id.* at 289. Whether a defendant's misrepresentations were made with the requisite intent to defraud is a question for the trier of fact. *U.S. v. White,* 673 F.2d 299, 302 (10th Cir.1982). We cannot weigh conflicting evidence, nor consider the credibility of the witnesses.

Under the appropriate standard of review, the evidence sustains the verdicts of guilty and the appellant's conviction of the charges contained in Counts I and II of the indictment.

AFFIRMED.