UNITED STATES of America,
Plaintiff-Appellee,

v.

Mark WELLINGTON,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Jerome C. UTZ, Defendant-Appellant.

Nos. 83–1307, 83–1311.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 18, 1985.

Decided March 4, 1985.

As Amended March 28, 1985.

*v. Traylor,* 656 F.2d 1326, 1333 & n. 6 (9th Cir.1981).

E. Leslie Hoffman, III, Washington, D.C., for U.S.

Christopher J. Cannon, San Francisco, Cal., for Wellington.

Jerome Utz, in pro. per.

Before MERRILL, FARRIS and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Along with two other defendants, Mark Wellington and Jerome Utz were indicted for eleven counts of mail fraud and violations of the Travel Act relating to a fraudulent land sales scheme. After a lengthy trial, a jury convicted Wellington and Utz on nine counts. We affirm.

## I

### Background

This case involves allegations of fraud arising out of a land sales operation in Placerville, California. The scheme was masterminded by David Pedley, who had four previous convictions on charges related to his involvement in fraudulent schemes. Following a stock fraud conviction in the mid-1970s, Pedley acted as an informer for several federal law enforcement agencies. Pedley was placed in the federal witness protection program. While in that program, he met Jerome Utz, who was a deputy attorney general for the state of California. Utz assisted Pedley and his son in obtaining a legal name change from "Pedley" to "Wellington." Utz also assisted David Wellington in obtaining clearance from federal authorities to engage in house construction. Wellington was joined by his son, Mark Wellington, and a friend, Michael Cano. Utz became a silent partner in the enterprise. The record reveals that David Wellington did not act as an informer for the state of California and that Utz's superiors were unaware of the assistance that Utz provided to the Wellingtons.

In 1976, Wellington and his associates recruited a sales force and began to solicit investors for their real estate development. They created Mission Vectors, Inc. ("Mission Vectors"), which owned an airplane that was used to fly potential investors

from San Jose to Placerville. On arriving in Placerville, the potential investors were told that the proposed development would proceed in four stages. First, the investors would purchase lots from Pacific Park Properties ("PPP") for $10,000 each. Each lot would be free and clear of liens and encumbrances. Second, the developers would arrange construction loans in the investors' names. Third, Cano Construction Company ("CCC") would use the funds to construct houses on the lots. The investors were given a brochure which stated that CCC had been successfully producing houses since 1974. Fourth, Diamond Pacific Realty ("DPR") would market the completed homes. The investors were told that they would recover their down payments and receive any profits that were realized.

Several of those representations were false. All of the lots were subject to substantial liens, many of which were soon the subject of foreclosure proceedings. PPP did not even own some of the lots. In addition, CCC was created in 1976, rather than 1974. None of the principals had substantial experience in construction.

Several investors either discovered the misrepresentations or grew impatient with the lack of progress in the construction of their houses. To lull those investors into a sense of security, Wellington and his associates made further misrepresentations and promises and placed money into escrow accounts. The money in the escrow accounts was subsequently diverted to other accounts. PPP, CCC, and DPR declared bankruptcy in August 1978.

During the course of the development project, substantial amounts of money borrowed on behalf of the investors were diverted to other uses. These uses included renting a Mercedes for each of the principals, developing a potential television series about the federal witness protection program, and investing in private ventures.

After a lengthy investigation, a federal grand jury in the Eastern District of California indicted David Wellington, Mark Wellington, Jerome Utz, and Michael Cano on June 3, 1982. The indictment charged the defendants with nine counts of mail fraud and two counts of violating the Travel Act. See 18 U.S.C. §§ 1341, 2314. Utz and Cano entered pleas of not guilty. Following his arrest in Mexico, Mark Wellington also pleaded not guilty. During the pendency of this case, David Wellington was imprisoned in Mexico awaiting trial on unrelated charges. David Wellington and Mark Wellington were also charged in a separate indictment with a scheme involving check kiting. The check kiting indictment was pending during the proceedings in this case.

On the motion of the defendants, venue was transferred to the Northern District of California. Judge Thelton Henderson presided over the first seven weeks of the trial. When Judge Henderson became ill, he was replaced by Senior Judge Ray McNichols, who presided over the final two weeks of the trial. On August 29, 1983, the jury convicted Wellington and Utz on nine of the eleven counts. Cano was acquitted on two counts, but the jury deadlocked on the remaining nine counts. The Government subsequently dismissed all charges against Cano. On December 6, 1983, Judge McNichols sentenced Wellington and Utz to three years imprisonment on each count, with the sentences running concurrently. Judge McNichols suspended all but six months of Utz's sentence and sentenced him to three years of probation.

## II

### The Indictment

The original indictment charged the defendants with a wide range of unlawful acts relating to the fraudulent land sales scheme. At trial, the defendants filed a motion to strike several unproven allegations as surplusage. After the Government admitted that various allegations were unproven, the district court struck those allegations. The original indictment was retyped with the deleted allegations omitted. The district court ultimately submitted the altered indictment to the jury. The defendants now contend that the

Government's failure to prove the deleted allegations caused an amendment of the indictment in violation of their fifth amendment right to be indicted by a grand jury.[1]

■ Any person charged with a crime that is punishable by death or imprisonment in a penitentiary has a constitutional right to be indicted by a grand jury. U.S. Const. amend. V; *see Ex parte Wilson,* 114 U.S. 417, 427, 5 S.Ct. 935, 940, 29 L.Ed. 89 (1885); 1 C. Wright, *Federal Practice and Procedure* § 121 (1982). In *United States v. Pazsint,* we summarized the law as follows:

> After an indictment has been returned, its charges may not be broadened through amendment—whether it be by physical alteration, jury instruction, or bill of particulars—except by the grand jury. Simply correcting an obvious clerical error or eliminating surplusage from the text of the indictment may be harmless error, but amending the indictment to charge a new crime through the jury instructions constitutes *per se* reversible error.

703 F.2d 420, 423 (9th Cir.1983) (citations omitted). It is well settled that "a portion of the indictment that the evidence does not support may be withdrawn from the jury, and this is not an impermissible amendment, provided nothing is thereby added to the indictment, and that the remaining allegations charge an offense." 1 C. Wright, *supra,* § 127, at 422; *see United States v. Dawson,* 516 F.2d 796, 801–02 (9th Cir.), *cert. denied,* 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80 (1975). The defendants claim

that the altered indictment charged them with a different offense than the original indictment and that the alteration therefore constituted an amendment. The district court disagreed and denied the defendants' motions for a judgment of acquittal under Rule 29.[2]

■ It is well settled that the government need not prove every allegation of fraudulent activity in an indictment. *United States v. Gatewood,* 733 F.2d 1390, 1394 (10th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 200, 83 L.Ed.2d 132 (1984); *United States v. Beecroft,* 608 F.2d 753, 757 (9th Cir.1979). Even after the deletions, the indictment charged the defendants with numerous unlawful acts relating to the fraudulent land sales scheme. The altered indictment did not charge the defendants with a "new crime" or with additional unlawful acts. Instead, the altered indictment charged the defendants with perpetrating the same essential fraudulent scheme that was alleged in the original indictment. *See Salinger v. United States,* 272 U.S. 542, 549, 47 S.Ct. 173, 175, 71 L.Ed. 398 (1926); *Dawson,* 516 F.2d at 804. Accordingly, the district court's denial of the defendants' motions under Rule 29 was proper under the general rules governing the deletion of unproven allegations.

The defendants assert that our recent decision in *United States v. Miller,* 715 F.2d 1360 (9th Cir.1983), *modified on denial of rehearing,* 728 F.2d 1269 (9th Cir.), *cert. granted,* — U.S. —, 105 S.Ct. 78, 83 L.Ed.2d 26 (1984), requires a reversal in this case. We disagree. The defendant in

---

**1.** By filing a motion for the removal of surplusage under Rule 7(d), the defendants did not waive their right to challenge the resulting indictment as charging a new or different crime. All that was waived was their right to challenge the physical alteration of the indictment. The Advisory Committee analyzed Rule 7(d) as follows:

> This rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial. The authority of the court to strike such surplusage is to be limited to doing so on defendant's motion, in light of the rule that the guaranty of indictment by a grand jury implies that an

indictment may not be amended. By making such a motion, the defendant would, however, waive his rights in this respect.

Fed.R.Crim.P. 7(d) advisory committee note (citation omitted); *see United States v. Milestone,* 626 F.2d 264, 269 (3d Cir.), *cert. denied,* 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980). The defendants' contention that the Government's failure to prove the deleted allegations constituted an amendment is properly before us.

**2.** The sufficiency of an indictment is reviewable de novo. *United States v. Buckley,* 689 F.2d 893, 897 (9th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983).

*Miller* was charged with two unlawful acts, one of which the prosecution did not prove. The unproven allegation, a "false burglary," was at least as significant as the proven allegation, an inflated insurance claim. We noted that "there can be no dispute that Miller's conviction was predicated on a substantially narrower scheme than that pleaded in the indictment...." 715 F.2d at 1363. Accordingly, we reversed Miller's conviction. In this case, the defendants' convictions were not "predicated on a substantially narrower scheme than that pleaded in the indictment." While several specific allegations were deleted, the essential scheme alleged in the indictment remained unaltered. We conclude that the district court correctly denied the defendants' motions under Rule 29.[3]

### III

#### Jury Instructions

When reviewing a challenge to the jury instructions, we consider the instructions as a whole. *United States v. Green*, 745 F.2d 1205, 1209 (9th Cir.1984). The district court must give an instruction relating to any legitimate theory of defense that is supported by evidence. *United States v. Wright*, 593 F.2d 105, 107 (9th Cir.1979). The district court has broad discretion in formulating the instructions, however, and neither party may demand specific language. *United States v. Marabelles*, 724 F.2d 1374, 1382–83 (9th Cir. 1984); *United States v. James*, 576 F.2d 223, 226 (9th Cir.1978). Imperfectly formulated jury instructions will serve as a basis for overturning a conviction only upon a

showing of abuse of discretion. *Green*, 745 F.2d at 1209.

#### A. Unified Scheme Instruction

In *United States v. Mastelotto*, we overturned a mail fraud conviction because the district court failed to instruct the jury that: (1) it must unanimously find the existence of a single scheme to defraud, and (2) the single scheme to defraud must not be substantially different from the scheme charged in the indictment. 717 F.2d 1238, 1249–51 (9th Cir.1983). The district court in this case instructed the jury as follows:

The indictment alleges the existence of a scheme to defraud. Each of the jurors must find the defendant guilty of participation in the same single scheme to defraud and that the scheme to defraud in which the defendant is found to have participated is the same scheme as the overall fraudulent scheme alleged in the indictment.

The jury was also instructed that it could not convict a defendant unless the defendant was "a willing and active participant in the particular scheme to defraud alleged in the indictment." These instructions were a full and accurate statement of the law.

The defendants claim, however, that the district court erred by failing to instruct the jury regarding the existence of multiple schemes. The defendants assert that the existence of multiple schemes was a valid theory of defense that required a jury instruction. The jury instruction quoted above, however, covered this theory of defense. If the jury did not find a "single scheme to defraud," it could not have convicted the defendants.[4] In essence, the de-

---

**3.** The defendants argue that the facts presented at trial reveal the existence of multiple schemes, rather than a single scheme. Accordingly, they contend that their convictions must be reversed because of the variance between the indictment and the evidence. We disagree. As discussed below, the jury was instructed that it could not convict the defendants unless it found a single scheme. We conclude that a rational trier of fact could have found a single scheme. *See United States v. Arriaga-Segura*, 743 F.2d 1434, 1435 (9th Cir.1984). While it would have been possible for the jury to find multiple schemes, it

did not do so. The record does not reveal a fatal variance.

**4.** The defendants also claim that the district court's instructions allowed the jury to convict the defendants on the basis of acts by third parties in unrelated conspiracies. In essence, this argument is a restatement of the "multiple schemes" argument. Once again, the jury could not have convicted the defendants if it had found separate "conspiracies." In addition, the jury was required to find that the defendants were willing participants in the overall scheme. This argument is without merit.

fendants are objecting to the manner in which the district court formulated the instruction. Accordingly, this argument is without merit.[5]

### B. Miscellaneous Challenges to Jury Instructions

■ The defendants argue that David Wellington's status as a federal protected witness justified a certain amount of misrepresentation and deception to protect him and his family. The district court refused to instruct the jury regarding this defense. The defendants have cited no authority for the proposition that a federal protected witness has the right to violate the mail fraud statute to conceal his or her identity. As a result, we conclude that the proposed instruction was merely an embellishment on the defendants' general theory that their actions were not intended to deceive investors. *See United States v. Ives*, 609 F.2d 930, 934 (9th Cir.1979), *cert. denied*, 445 U.S. 919, 100 S.Ct. 1283, 63 L.Ed.2d 605 (1980). The jury was fully and properly instructed regarding that theory. Accordingly, the district court did not abuse its discretion by rejecting the proposed instruction.

■ The defendants also argue that the district court impermissibly enlarged the indictment by instructing the jury as follows: "In all eleven counts the Government alleges that the defendants aided and abetted each other." The defendants argue that this misstated the contents of the indictment. In fact, the indictment *did* allege that the defendants aided and abetted each other. While it is true that the indictment did not charge the defendants with

violating the statute governing aiders and abettors, that statute does not create a separate crime. *United States v. Kegler*, 724 F.2d 190, 200–01 (D.C.Cir.1984). The statute merely provides that aiders and abettors are liable as principals. 18 U.S.C. § 2(a). Accordingly, the district court's instructions did not enlarge the indictment.[6]

## IV

### Evidence Relating to David Wellington
### A. Hearsay Statements

■ The defendants claim that the district court erred by allowing several witnesses to testify regarding out-of-court statements by David Wellington. The defendants contend that the admission of those statements is reversible under the hearsay rules and the confrontation clause. With only one exception, however, the statements are not hearsay. In order to constitute hearsay, a statement must be "offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c); *see* Wellborn, *The Definition of Hearsay in the Federal Rules of Evidence*, 61 Texas L.Rev. 49 (1982). Most of the alleged hearsay statements are false representations that were made to potential investors. These representations are not hearsay because their probative value is independent of their truth. *United States v. Gibson*, 690 F.2d 697, 700–02 (9th Cir.1982), *cert. denied*, 460 U.S. 1046, 103 S.Ct. 1446, 75 L.Ed.2d 801 (1983). The remainder of the alleged hearsay statements are incidental comments and instructions to employees, the truth of which was not relevant to any issue at trial.

---

5. The defendants also contend that the district court violated their right to a jury trial by failing to submit the "multiple schemes" issue to the jury. In support of their argument that the district court failed to submit this issue to the jury, the defendants quote several passages from the jury instructions. We disagree with the defendants' interpretation of the jury instructions. As noted above, the instructions required the jury to find a single scheme to defraud.

6. The defendants argue that the district court misstated the elements of mail fraud. The district court's instructions were correct. *See Beec-*

*roft*, 608 F.2d at 757. The defendants also argue that the district court's statement to the jury that the indictment states an offense constituted "improper vouching." This argument lacks a legal basis. In any event, the district court instructed the jury that the indictment was not evidence. Finally, the defendants argue that the district court was incorrect when it instructed the jury that a violation of the Travel Act does not require specific intent. The district court was correct. *E.g., United States v. Masters*, 456 F.2d 1060, 1061 (9th Cir.1972).

■ The record reveals that only one out-of-court statement by David Wellington was admitted for the truth of the matter asserted. Charles White, an employee of CCC, testified that Wellington said that he and Utz were friends and that a car had been purchased for Utz. The fact that Utz and David Wellington were friends is well documented in the record. In fact, Utz described his friendship with David Wellington in great detail on direct examination. Utz does not dispute the existence of the car that was allegedly purchased with CCC's funds, but claims that he paid for the car with rental income from an airplane that he owned. White testified that the airplane was actually purchased by Mission Vectors on behalf of CCC. White's testimony thus supports the proposition that the car was purchased by CCC, rather than Utz, even without the hearsay statement. As a result, the hearsay statements were cumulative. See United States v. Miranda-Uriarte, 649 F.2d 1345, 1350 (9th Cir. 1981). In light of the overwhelming evidence of other fraudulent acts by Utz and the minimal probative value of the hearsay statements even when standing alone, we conclude that any error committed by the district court was harmless. See United States v. Foster, 711 F.2d 871, 880–81 (9th Cir.1983), cert. denied, —— U.S. ——, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984); United States v. Castillo, 615 F.2d 878, 883 (9th Cir.1980).

## B. Prior Convictions and Bad Acts

At trial, the district court allowed the introduction of evidence regarding David Wellington's past. The evidence included David Wellington's past convictions for various fraudulent schemes, his involvement in the federal witness protection program, and his activities as an informer. Both defendants contend that the admission of this evidence constituted reversible error.

■ Utz contends that the prior convictions were inadmissible, citing various cases and rules relating to the use of prior convictions to impeach a witness. Those cases and rules are inapplicable because the convictions were not admitted to impeach David Wellington. Instead, the Government introduced the convictions and the circumstances surrounding the convictions to prove that Utz knew of David Wellington's criminal past. The Government alleged that Utz made representations to lenders and potential investors regarding David Wellington's character. If Utz knew that David Wellington had a history of involvement in fraudulent schemes, those representations were fraudulent.[7] The use of prior convictions for this purpose is proper. See, e.g., United States v. Wilson, 536 F.2d 883, 886 (9th Cir.), cert. denied, 429 U.S. 982, 97 S.Ct. 497, 50 L.Ed.2d 592 (1976); United States v. Jones, 425 F.2d 1048, 1051–52 (9th Cir.), cert. denied, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970). Accordingly, the district court did not abuse its discretion by admitting evidence relating to David Wellington's prior convictions.

Mark Wellington contends that the evidence relating to David Wellington's past should have been excluded under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice to Mark Wellington. Wellington argues that the father-son relationship between the Wellingtons created a danger that the jury would hold Mark Wellington accountable for his father's actions. Wellington notes that his father's past was only relevant with respect to Utz and argues that a higher standard for admissibility is therefore appropriate. See United States v. Figueroa, 618 F.2d 934, 945–46 (2d Cir. 1980).

■ We review the district court's ruling under Rule 403 for an abuse of discretion. United States v. Winters, 729 F.2d 602, 604 (9th Cir.1984). Wellington's arguments regarding the transference of culpability from father to son are speculative.

---

**7.** Contrary to the assertion in Mark Wellington's brief, Utz's knowledge of David Wellington's convictions was a disputed issue. Utz denied such knowledge on cross-examination.

The district court was in a position to observe the effects of the admission of the evidence, yet concluded that Rule 403 did not require exclusion. *See, e.g., United States v. Longoria,* 624 F.2d 66, 68 (9th Cir.) (noting that a district court's decision to admit a prior conviction over an objection under Rule 403 "should be given great deference"), *cert. denied,* 449 U.S. 858, 101 S.Ct. 158, 66 L.Ed.2d 73 (1980). In addition, the jury was instructed that David Wellington's past misconduct was only admissible against Utz. The record does not support the conclusion that the district court abused its discretion.

## V

### *Severance*

■■■ The decision to sever the trials of codefendants rests within the discretion of the district court. *United States v. Gonzales,* 749 F.2d 1329, 1333 (9th Cir. 1984); *see* Fed.R.Crim.P. 14. The test for deciding whether the district court abused its discretion is "whether a joint trial would be so prejudicial that the trial judge could exercise his discretion in only one way." *United States v. Escalante,* 637 F.2d 1197, 1201 (9th Cir.), *cert. denied,* 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980).

■■■ Utz claims that he was unfairly prejudiced by joinder in six ways. First, he notes that he was not named in many of the allegations in the indictment. This fact is irrelevant because he could be convicted solely on the basis of his knowing participation in the scheme. *See, e.g., United States v. Mitchell,* 744 F.2d 701, 704 (9th Cir.1984).

Second, Utz notes that the Government introduced evidence relating to Mark Wellington's alleged attempt to avoid arrest by fleeing to Mexico. Utz argues that this was unfairly prejudicial to him because the jury was not instructed that Wellington's flight could not be used against Utz. The

jury, however, was instructed to consider only the individual defendant's acts or statements in deciding whether that defendant participated in the scheme. The record does not reveal any occasion on which Utz requested a more specific instruction. *See* Fed.R.Crim.P. 30.

Third, Utz claims that the existence of the check kiting indictment hampered his defense because Mark Wellington was named as a defendant in that indictment. The record reveals no instance in which relevant evidence was excluded because of the check kiting indictment.

Fourth, Utz notes that the Wellingtons' bankruptcy petition was still active at the time of trial. The relevance of this fact is unclear. In any event, Utz never asserted the bankruptcy petition as a ground for severance at trial.

Fifth, Utz notes that David Wellington's prior convictions were introduced against him. Those convictions would have been admissible against Utz even if the district court had severed the cases.

Sixth, Utz notes that an alias used by Mark Wellington in Mexico was introduced at trial. The relevance of this fact is unclear. In any event, the district court did not abuse its discretion by denying a severance on that ground.

In sum, Utz's arguments do not establish an abuse of discretion by the district court.[8]

## VI

### *Sufficiency of Evidence*

■■■ In determining the sufficiency of the evidence, we consider the evidence in the light most favorable to the Government and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2751, 2789, 61 L.Ed.2d 560 (1979); *Arriaga-Segura,* 743 F.2d at 1435.

**8.** Wellington argues that the admission of evidence concerning his father's past was so unfairly prejudicial to his defense that severance was required. For the reasons stated above in

our discussion of Wellington's objection under Rule 403, we conclude that the district court did not abuse its discretion by refusing to sever the trials.

Utz claims that the evidence produced at trial was insufficient. The record reveals, however, that the evidence of Utz's guilt was overwhelming.[9]

Utz raises two arguments in support of his position. First, he claims that the Government produced no evidence showing his involvement in various aspects of the scheme. This fact is irrelevant. It is only necessary that the defendant be a knowing participant in the scheme. *See Mitchell,* 744 F.2d at 704. The evidence of Utz's participation was overwhelming. Utz was present at the earliest meetings regarding the formation of the real estate venture. A realtor who dealt with David Wellington considered Utz to be a "silent partner" in the enterprise. Most of the Government's witnesses testified to some type of involvement on Utz's part. In sum, the evidence was sufficient to support the conclusion that Utz was a knowing and active participant in the scheme.

Second, Utz claims that the Government failed to show "mailings" within the meaning of 18 U.S.C. § 1341. The Government introduced evidence that the defendants mailed deeds to various investors, that the investors mailed payments to the defendants, and that the defendants mailed letters to the attorneys for some of the investors. All of these mailings were in furtherance of the scheme. *See Green,* 745 F.2d at 1208. Accordingly, the requirements of section 1341 were satisfied.

## VII

### *Speedy Trial Act Claims*

18 U.S.C. § 3161(c)(1) states: "In any case in which a plea of not guilty is entered, the trial of a defendant charged in an ... indictment with the commission of an offense shall commence within seventy days ... from the [last] date the defendant has appeared before a judicial officer of the court in which such charge is pending...." Section 3161(h) sets forth various types of excludable delay. Section 3161(h)(8) authorizes a continuance based on "the ends of justice," in accordance with specified factors.

 Utz claims that seventy-six days had elapsed prior to his appearance on December 6, 1982. The district court rejected this claim. Utz does not claim that the district court applied an incorrect legal standard. Accordingly, we review the district court's findings under the clearly erroneous standard. *United States v. Henderson,* 746 F.2d 619, 622 (9th Cir.1984). Utz has stated no reasons for concluding that the findings are clearly erroneous. Instead, we conclude that the district court's findings are amply supported by the record.

 Utz also contends that the district court's decision to grant a continuance under section 3161(h)(8) on December 6, 1982, was improper because the district court failed to state its reasons in the record. *See* 18 U.S.C. § 3161(h)(8)(A). The record reveals, however, that the district court specifically found that the case was "complex," which is a proper ground under section 3161(h)(8)(B)(ii). In any event, Utz failed to object in a timely fashion. *See id.* § 3162(a)(2). In sum, Utz's Speedy Trial Act claims are without merit.[10]

## VIII

### *Juror Questionnaire*

Prior to voir dire, the district court sent out a questionnaire to prospective jurors.

**9.** The defendants also attempt to impeach the jury's verdict with the affidavit of juror Vance I. Morris, Jr. This is impermissible. Fed.R.Evid. 606(b).

**10.** The defendants also assert their right to a speedy trial under the sixth amendment. The defendants claim that the district court had a duty to sever the cases *sua sponte* when the Government requested a continuance in order to apprehend the absent defendants. The defendants cite *United States v. Didier,* 542 F.2d 1182 (2d Cir.1976), in which the court reversed the district court's denial of a motion to dismiss the indictment under extreme circumstances. No such circumstances are presented by this case. The district court's decision to grant the continuance was not an abuse of discretion. *See United States v. Mitchell,* 744 F.2d 701, 704 (9th Cir.1984).

The questionnaire contained two questions relating to the jurors' ability to participate in a lengthy trial. The defendants contend that the use of those questions mandates a reversal.

### A. *The Jury System Improvements Act*

Juror selection in federal courts is governed by the Jury System Improvements Act of 1978, 28 U.S.C. §§ 1861–1877. The Act mandates the random selection of jurors. The defendants contend that the questionnaire is contrary to that mandate.

■ Although the defendant's contention may have merit, they lack a statutory remedy. The remedies provided under the statute are exclusive. *Id.* § 1867(e). In order to obtain those remedies, a defendant must file a timely motion containing "a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title." *Id.* § 1867(d). The defendants failed to file such a statement. Accordingly, the defendants may not invoke the statutory remedies. *United States v. Foxworth*, 599 F.2d 1, 3 (1st Cir.1979); *United States v. James*, 453 F.2d 27, 29 (9th Cir.1971).

### B. *Constitutional Grounds*

#### 1. *Excessive Delegation*

■ The defendants contend that the use of the questionnaire constituted an unconstitutional delegation of judicial power to the court clerk. The record, however, does not reveal that the court clerk was given *any* authority to select or to exclude jurors. In fact, the record does not even show that the questions were actually used. Accordingly, we reject the defendant's contention under the facts of this case.[11]

#### 2. *Jury Composition*

■ The defendants allude to a violation of their sixth amendment rights, but do not offer a theory to support such a claim. The sixth amendment does not guarantee a randomly selected jury. *United States v. Nelson*, 718 F.2d 315, 319 (9th Cir.1983). Accordingly, this contention is without merit.

### IX

### *Miscellaneous Assignments of Error*

### A. *Cross-Examination*

■ The defendants contend that the district court erred by limiting the scope of the cross-examination. The sixth amendment guarantees a criminal defendant's right to confront adverse witnesses. Nevertheless, "[t]he scope of the cross-examination of a witness is subject to the discretion of the trial court and is reviewable solely for an abuse of that discretion." *United States v. Cutler*, 676 F.2d 1245, 1248 (9th Cir.1982); *see* Fed.R.Evid. 611(a). The testimony that the defendants sought to obtain on cross-examination was either irrelevant or otherwise inadmissible. We conclude that the district court's actions were correct and within its discretion.

### B. *Prosecutorial Vouching*

■ It is well settled that a prosecutor may not vouch for the credibility of a witness. *See, e.g., United States v. West*, 680 F.2d 652, 655 (9th Cir.1982). The defendants claim that the Government vouched for the credibility of five of its witnesses. This is incorrect. The statements at issue were of the general form: "Why would [the witness] not tell you the truth?" This did not constitute "vouching." *See United States v. Flake*, 746 F.2d 535, 539–41 (9th Cir.1984); *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir.1980), *cert. denied*, 452 U.S. 942, 101 S.Ct. 3088, 69 L.Ed.2d 957 (1981).

### C. *Judicial Misconduct*

■ The defendants contend that the district court violated its duty to act impar-

---

**11.** Two Fifth Circuit decisions suggest that this type of decision may be delegated to a court clerk without violating the Constitution. *United States v. Maskeny*, 609 F.2d 183, 193–94 (5th Cir.), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980); *United States v. Evans*, 526 F.2d 701, 706 (5th Cir.), *cert. denied*, 429 U.S. 818, 97 S.Ct. 62, 50 L.Ed.2d 78 (1976). We do not reach that issue.

tially by encouraging the jurors to take notes during complex testimony involving financial data. The defendants also note that the district court told the jury that "another jury of people like you brought in this indictment." They contend that this placed the "prestige and moral persuasiveness" of the Grand Jury behind the indictment. Both arguments are without legal support. Moreover, the defendants failed to object. *See* Fed.R.Crim.P. 51.

### D. *Side-Bar Discussions*

■ Defendant Utz claims that Judge Henderson conducted over 117 side-bar discussions at which Utz was not present. Utz contends that this practice deprived him of his right to be present at trial. Utz also claims that Judge McNichols refused to conduct side-bar discussions in violation of Federal Rule of Evidence 103(c). Both arguments are without merit. The district court has broad discretion in controlling the conduct of a trial. *See Geders v. United States*, 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976). The record does not reveal an abuse of discretion.

### E. *Rule 16(a)(1)(A)*

■ Federal Rule of Criminal Procedure 16(a)(1)(A) states that a defendant "corporation, partnership, association or labor union" has the right to discover the testimony of officers and employees before the grand jury. The defendants invoke this right. Rule 16(a)(1)(A), however, does not apply to individuals.

### F. *Preindictment Delay*

■ The defendants argue that preindictment delay caused the loss of several items of evidence. The substance of each item of evidence was introduced through alternative means. Accordingly, the defendants were not prejudiced. *See* Fed.R. Crim.P. 52(a).

### G. *Motion to Dismiss for Vindictive Prosecution*

Without explanation, the defendants contend that their motion to dismiss for vindic-

tive prosecution should have been granted. The record does not reveal vindictive prosecution. *See United States v. Heldt*, 745 F.2d 1275, 1280–81 (9th Cir.1984).

### H. *Motion to Disclose Grand Jury Proceedings*

■ The defendants contend that their motion to disclose grand jury proceedings should have been granted because there was no threat to the lives of the grand jury witnesses. This argument is irrelevant. Grand jury proceedings may only be disclosed in accordance with Federal Rule of Criminal Procedure 6(e)(3). The record does not reveal an abuse of discretion.

### I. *Original FBI Notes*

The defendants argue that the Government violated a court order requiring it to produce original FBI notes. The record does not support this contention. Moreover, the defendants have not shown prejudice. *See* Fed.R.Crim.P. 52(a).

### J. *Eyeballing the Jury*

■ The defendants make the following assertion:

During every day of trial, two government prosecutors and one FBI agent sat at Plaintiffs [sic] table. Their backs were to the defendants. Their backs and right sides were to the Court. They directly faced the jury from a distance of less than three feet. They eyeballed and smiled at each member of the jury on a minute by minute basis. In time the jury and the prosecution became as one.

The defendants' argument that this constitutes reversible error is without legal support. Moreover, the defendants failed to object at trial.

### K. *Constitutionality of the Grand Jury System*

■ The defendants argue that the grand jury system denies them equal protection because they have no right to a postindictment preliminary hearing. We reject that argument. *See, e.g., United States v. Anderson*, 481 F.2d 685, 691 (4th Cir.1973), *aff'd*, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974).

### L. *Effective Assistance of Counsel*

■ Utz claims that his counsel's failure to call a particular rebuttal witness deprived Utz of effective assistance of counsel. Utz's claim is inadequate in light of the standards set forth in *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

### M. *Interference with Right to Interview Witnesses*

The defendants claim that the district court barred them from interviewing the Government's witnesses. In fact, the district court merely required counsel to seek the court's permission before interviewing a witness who had already started to testify. The defendants do not allege that they were harmed in any way by that ruling.

### X

### CONCLUSION

The judgment of the district court is AFFIRMED.