Marilyn MILLER, Plaintiff–Appellee,

v.

RYKOFF–SEXTON, INC., et al., Defendants,

and

Atlas Hotels, Inc., Defendant–Appellant.

No. 87–5610.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1987.

Decided April 25, 1988.

Morgan & Armbrister, Los Angeles, Cal., Horvitz, Levy & Amerian, George P. Schiavelli (argued), Sharon Munson Swanson, Encino, Cal., for defendant-appellant.

James P. Cinque, Robert W. Cinque, Cinque & Cinque, New York City, for plaintiff-appellee.

Before O'SCANNLAIN and LEAVY, Circuit Judges, and ORRICK,[*] District Judge.

LEAVY, Circuit Judge:

## OVERVIEW

Atlas Hotels, Inc. (Atlas) appeals from a judgment entered pursuant to a jury verdict awarding Marilyn Miller compensatory and punitive damages. Miller brought this diversity action against Atlas for injuries suffered because Atlas used sulfites on a salad consumed by Miller. Atlas asserts that the district court erred in instructing the jury concerning a missing witness, comparative fault, and damages for future pain and suffering. Atlas also asserts that the district court erred by failing to grant Atlas' motion for a directed verdict on Miller's punitive damages claim and by denying Atlas' motion to amend its answer to add settlement as an affirmative defense. We reverse the denial of Atlas' motion to amend its answer, affirm the district court's other rulings and remand for proceedings consistent with our opinion.

[*] Honorable William H. Orrick, Jr., Senior United States District Judge, Northern District of California, sitting by designation.

## FACTS AND PROCEEDINGS BELOW

On March 12, 1984, in Palm Springs, Miller ate a Cobb salad with bleu cheese dressing for lunch. Soon thereafter, she had an asthma attack and went to the hospital emergency room for treatment. This attack was no different from others she had experienced in the past; Miller told the hospital staff it might have been an allergic reaction to the salad dressing.

The same day, Miller went to dinner at the Carriage Inn in Los Angeles. Atlas owns the Carriage Inn. After eating several bites of a dinner salad, she began wheezing and lost consciousness. Miller remained in a "life threatening" situation for forty-eight hours.

Miller later tested positive for sulfite sensitivity and learned that the sulfites used as a preservative on the salad at the Carriage Inn had been the cause of her reaction. She then brought this action against Atlas.

Atlas moved to amend its answer ten months before trial to add settlement as an affirmative defense. According to an affidavit by Atlas' attorney, Miller's attorney demanded $50,000 in settlement on September 30, 1985, and Atlas offered that amount on October 8, 1985. On October 11, Miller's attorney indicated she wanted $100,000 to settle. Miller opposed the motion to amend; her attorney declared in an affidavit that the $50,000 figure had been conditioned on early settlement and that there had been no settlement. Atlas' motion to amend was denied.

At trial Atlas asserted that Atlas' former Vice–President of Hotel Operations, Giacomini, sent a memorandum to Atlas employees in 1983, banning the use of sulfites in Atlas kitchens. This memo was allegedly sent in response to a "60 Minutes" program on the danger of sulfites to asthmatics. According to Atlas, the Carriage Inn chef, Fernandez, knew of the ban but decided to use sulfites anyway. His supervisors allegedly did not detect his use of sulfites until Miller reacted to the salad.

Miller introduced evidence that Giacomini lied to Miller when she asked him the identity of the manufacturer of the substance on the salad. She also introduced evidence of later Atlas memos discussing use of sulfites, quarterly Atlas kitchen inspections which should have detected Fernandez' use of sulfites, and Atlas' invoice monitoring system which also should have detected the purchase of sulfites, if unauthorized.

Trial began on November 18, 1986. Atlas had listed Giacomini as a witness and, on November 4, had accepted a subpoena on his behalf. On November 13 Atlas notified Miller that Giacomini was no longer in its employ and would not be produced for trial. Miller informed the court of this sequence of events on the opening day of trial and requested a missing witness instruction. The court instructed Atlas to "make every attempt to obtain [Giacomini]." The following morning Atlas reported that it was continuing its efforts to have Giacomini testify and requested an opportunity to demonstrate why he did not appear if the court decided to give a missing witness instruction. On November 20 Atlas reported that Giacomini had left town and would not be appearing. The court said it would give the "agreed-upon instruction, regarding his being absent." Atlas made an offer of proof showing its unsuccessful efforts to produce Giacomini. Miller objected; the objection was overruled. However, Atlas never presented the evidence of its efforts to produce Giacomini to the jury. The court gave the missing witness instruction.

Following presentation of Miller's case in chief, Atlas moved for a directed verdict against Miller's claim for punitive damages on the ground that "there is no evidence that [Atlas] ratified or condoned or approved of" Fernandez' conduct as required by California Civil Code section 3294(b). The court denied the motion.

Miller and Atlas submitted proposed jury instructions. Atlas did not propose an instruction concerning California Civil Code section 3294's requirements for corporate liability for punitive damages; the court did not give such an instruction.

Miller requested an instruction allowing the jury to award damages for "any pain,

suffering and mental anguish which you find from the evidence of the case she is reasonably certain to suffer in the future from the same cause." Atlas objected to the instruction on the ground that Miller had not submitted evidence of future pain and suffering. The court gave the requested instruction. At trial, Miller testified that her reaction at the Carriage Inn caused her greatly increased concern about eating in restaurants. She also testified that, as a result of the reaction, her asthma attacks had to be treated with medication supplied intravenously, a process that took five to six hours, rather than with shots of the same medication, which could be given in one hour.

Atlas requested two instructions on contributory negligence. The first set forth the general principles of the defense; the second gave the particulars of how Miller was allegedly contributorily negligent. The court gave the first instruction but not the second.

The jury returned a verdict in favor of Miller and awarded compensatory damages of $213,200 and punitive damages of $300,-000. Atlas moved for a judgment notwithstanding the verdict, or, alternatively, for a new trial. The motion was denied. Atlas timely appealed.

## DISCUSSION

### 1. Missing Witness Instructions

Atlas contends that the district court erred in instructing the jury that it could infer a missing witness' testimony would be unfavorable to Atlas. Atlas argues that Giacomini, the witness upon whose absence the instruction was based, was equally available to both parties and could have been subpoenaed by Miller. This contention lacks merit.

■ This court reviews jury instructions as a whole, to determine whether the trial court gave instructions that were misleading or that stated the law incorrectly to the prejudice of the objecting party. *Lewy v. Southern Pac. Transp.*, 799 F.2d 1281, 1287 (9th Cir.1986). We reverse only for abuse of discretion. *Id.; Cameo Convales-*

*cent Center, Inc. v. Senn*, 738 F.2d 836, 844 (7th Cir.1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 780, 83 L.Ed.2d 775 (1985) (the determination of whether the missing witness instruction should be given rests within the trial court's sound discretion).

■ Because Atlas had agreed to produce Giacomini and subsequently failed to do so, the judge granted Miller's request for a missing witness instruction. In order to assure that Atlas was treated fairly on this issue, the judge granted Atlas' request to present proof of its unsuccessful efforts to produce Giacomini. Because Giacomini was an Atlas employee at the time it agreed to produce him as a witness, Atlas had a measure of control over Giacomini. Moreover, Atlas had an opportunity to obviate any feared effect from the instruction by presenting evidence of its efforts to produce Giacomini but failed to do so. Under these circumstances, giving the missing witness instruction was not an abuse of discretion.

### 2. Comparative Fault Jury Instructions

Atlas asserts that the trial court erred in giving a general comparative fault jury instruction which did not incorporate a statement of Atlas' specific comparative fault theory. Atlas argues that the judge should have included specific allegations of Miller's negligence in failing to ascertain, after her initial allergic attack, whether she was allergic to sulfites. That contention lacks merit.

■ A jury instruction is adequate, even if it does not use the exact words proposed by a party, incorporate every proposition of law suggested by counsel, or amplify an instruction, if the instruction given enables the jury to determine the issue intelligently. *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 726 F.2d 1381, 1398 (9th Cir.), *cert. denied*, 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984). The general comparative fault instruction, in conjunction with the evidence presented to the jury of Miller's previous attack after eating a salad,

enabled the jury to decide the issue intelligently.

### 3. Denial of Atlas' Motion for a Directed Verdict

Atlas appeals the denial of its motion for a directed verdict against Miller's claim for punitive damages.

The standard for reviewing the propriety of a directed verdict is the same on appeal as it is for the trial court. *Othman v. Globe Indem. Co.*, 759 F.2d 1458, 1463 (9th Cir.1985), *overruled on other grounds*, *Bryant v. Ford Motor Co.*, 844 F.2d 602 (9th Cir.1987); *Shakey's Inc. v. Covalt*, 704 F.2d 426, 430 (9th Cir.1983). A directed verdict is proper if the evidence permits only one reasonable conclusion. The court must examine all the evidence in the light most favorable to the nonmoving party to decide whether substantial evidence supports a finding in favor of that party. *Othman*, 759 F.2d at 1463 (citations omitted).

█ Examining the evidence in the light most favorable to Miller, substantial evidence would support a finding that Atlas' management knew that sulfites were used at the Carriage Inn.

Despite Giacomini's memo which banned sulfites, later memos indicating sulfites were FDA approved and indicating the posting requirements for sulfites could lead to the conclusion that Atlas' management had, at the very least, changed its position. Rigorous quarterly kitchen inspections could have revealed the presence of sulfites. Employees at the Carriage Inn knew of its use. While it is not clear that sulfites were stricken from Atlas' list of approved ingredients, the accounting office at corporate headquarters in San Diego paid for its purchase. No one told Fernandez, the Carriage Inn chef, that he was not to order sulfites or that Atlas would refuse to pay for it.

The motion for a directed verdict was properly denied.

### 4. Admission of Evidence of Atlas' Net Worth

█ The jury was allowed to consider Atlas' net worth for the purpose of ascertaining punitive damages. Atlas asserts that this evidence had a prejudicial impact on the compensatory damage award.

This argument is without merit. Because the denial of the motion for directed verdict was proper, the jury could consider Atlas' net worth to determine punitive damages. It was carefully instructed on the limits of compensatory damages. There is no indication the jury did not follow the court's instructions in awarding $213,200 in compensatory damages.

### 5. Punitive Damages Instruction

Atlas argues the jury was not instructed that punitive damages could be assessed against Atlas only under section 3294(b) of the California Civil Code (West 1987), which requires that a corporation authorize or ratify the wrongful conduct which is the subject of the lawsuit. Atlas contends the omission of this jury instruction went to the heart of the claims and resulted in a serious miscarriage of justice.

The trial court has broad discretion in formulating instructions and will be reversed only upon a showing of abuse of discretion. *United States v. Wellington*, 754 F.2d 1457, 1463 (9th Cir.), *cert. denied*, 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 573 (1985).

█ Atlas failed to request such an instruction. It failed to take exception on this basis to the instructions given. It asserts that the trial court should have issued such an instruction *sua sponte*, and that this court will impose a duty on a trial court to "give an instruction when the issue is central to the matter and failure to instruct on this point results in a miscarriage of justice." Atlas cites *Brown v. Avemco Inv. Corp.*, 603 F.2d 1367 (9th Cir.1979) to support its proposition.

Appellant's contention is without merit. This circuit has ruled that if an appellant does not request an instruction at trial, the issue is not preserved on appeal. *See, e.g., United States v. Burlington N., Inc.*, 500 F.2d 637, 639–40 (9th Cir.1974).

*Brown* does not help the appellant. *Brown* decided whether Federal Rule of Civil Procedure 51 requires a formal objection to instructions after they are given to the jury to preserve the issue for appeal. It holds that when an issue central to the trial is brought out in the examination of witnesses, in a contested motion for a directed verdict, and is the subject of requested instructions, the failure to object formally under Federal Rule of Civil Procedure 51 does not waive a party's right to appeal on that issue, because such an objection would neither focus the issue further nor change the court's mind. *Brown*, 603 F.2d at 1373. In *Brown*, the lack of proposed instructions was not an issue, because the appellant requested instructions.

Consequently, this challenge to the award of punitive damages is not preserved for appeal.

### 6. Future Pain and Suffering Instruction

■ Damages for future pain and suffering must be established with reasonable certainty. Cal.Civ.Code § 3283 (West 1987); *Silvester v. Scanlan*, 136 Cal.App. 107, 111, 28 P.2d 97 (1933).

Atlas contends the award for future pain and suffering was without factual support because Miller failed to establish any future damages. Atlas acknowledges Miller produced evidence of trauma, but claims she proved suffering only before trial, not after. It asserts the trial court erred in instructing the jury that it could award such damages, because both pre- and post-trial damages were not proven.

No case law supports Atlas' contention with respect to future damages. Miller testified that after this episode she was afraid to walk into a restaurant. When she did, she was afraid to order anything, and did not order anything that had "any fruits or any vegetables even on the plate." Nothing in the record indicates that her fears only occurred before the trial. The court properly instructed the jury that it could award damages for future pain and suffering.

### 7. Leave to Amend

■ Leave to amend shall be freely given when justice so requires. Fed.R.Civ. P. 15(a). The denial of leave to amend pleadings after a responsive pleading has been filed is reviewed for abuse of discretion. *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir.1987). We hold that it was an abuse of discretion to deny the motion to amend the answer to include the affirmative defense of settlement.

■ The plaintiff argues that amendment would have been futile because the settlement never occurred. A motion for leave to amend may be denied if it appears to be futile or legally insufficient. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir.1986). However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense. *Baker v. Pacific Far East Lines, Inc.*, 451 F.Supp. 84, 89 (N.D.Cal.1978); *see generally* 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[4] (2d ed. 1974) (proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)).

Atlas alleged in its memorandum in support of its motion to amend that Miller's attorney told Atlas' attorney that Miller was demanding $50,000 to settle, and Atlas' attorney offered that amount. Questions of fact must be resolved to determine whether a settlement occurred. The trial court abused its discretion in denying Atlas' motion for leave to amend to include the affirmative defense of settlement.

### CONCLUSION

The district court's denial of Atlas' motion to amend its answer to include the affirmative defense of settlement is reversed. The matter is remanded to the district court with instructions to allow the filing of an amended answer to include that defense, and for trial solely on that issue.

Even though we remand on the single issue, we give no direction with respect to the scope of the evidence which is or which may become relevant to that issue. As usual, we leave that to the trial judge.

If it is found that settlement occurred, the district court shall enter a judgment to carry out the terms of the settlement. If it is found that no settlement occurred, the district court is directed to enter a judgment for Miller on the earlier jury verdict which awards compensatory damages in the amount of $213,200 and punitive damages in the amount of $300,000.

The remainder of the district court's rulings are affirmed.