SAES GETTERS S.p.A., Plaintiff,

v.

AERONEX, INC., a California corporation, Defendant.

Aeronex, Inc., a California corporation, Counterclaimant,

v.

SAES Getters S.p.A., Counterdefendant.

No. CIV.02CV612–B LSP.

United States District Court, S.D. California.

Aug. 15, 2002.

Breton A Bocchieri, Perkins Coie, Santa Monica, CA, Mark Philip Wine, Oppenheimer Wolff and Donnelly, Los Angeles, CA, E Patrick Ellisen, Oppenheimer Wolff and Donnelly, Palo Alto, CA, for SAES Getters S P A, plaintiff.

Richard L Blaylock, Brobeck Phleger and Harrison, San Diego, CA, for Aeronex Inc, defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR LEAVE TO AMEND**

BREWSTER, Senior District Judge.

**I. INTRODUCTION**

Before the Court is Defendant Aeronex's Motion for Leave to Amend First

Amended Answer, Affirmative Defenses, and Counterclaims ("Motion" or "Motion for Leave to Amend"). The parties came for a hearing on Defendant's Motion on August 12, 2002, at 10:30 a.m. Having carefully considered the parties' arguments as presented in their papers[1] and at the hearing, the Court grants Defendant's Motion for the reasons given below.

**II. BACKGROUND**

This patent case is still in the earliest stages of litigation. The following factual detail is relevant to Aeronex's Motion for Leave to Amend.

**A. SAES Getters's Suit**

SAES Getters, S.p.A., an Italian corporation, ("SAES Getters") owns U.S. Patent Number 5,716,588 (the " '588 Patent"), issued on February 10, 1998, entitled "Getter Materials for Deoxygenating Ammonia/Oxygen Gas Mixtures at Low Temperature." The '588 Patent, as its title indicates, claims to describe a "method for removing oxygen from ammonia at low temperature."

On December 28, 2001, SAES Getters filed this action against Aeronex in the United States District Court for the Northern District of California, alleging that Aeronex was manufacturing a device that infringed the '588 Patent. Aeronex answered the complaint on February 5, 2002, and then filed a motion to transfer venue a week later. On March 22, 2002, the district judge granted Aeronex's motion and transferred the action to the Southern District of California.

Thereafter, the parties began amending their pleadings. First to amend was SAES Getters, which filed its amended

1. Including Plaintiff's Surreply. *See* Order Granting Pl.'s Ex Parte Appl. for Leave to Submit Surreply.

complaint on May 2, 2002, pursuant to stipulation by the parties. In its Amended Complaint, SAES Getters alleges that it "manufactures gas purifiers using the technology claimed in the '588 Patent in a production factility ... run by a wholly owned subsidiary called SAES Pure Gas, Inc." Am. Compl. ¶ 9. Aeronex responded to the amended complaint with a First Amended Answer, Affirmative Defenses and Counterclaims filed on May 20, 2002.

The magistrate court has stayed the initiation of discovery in this case, with the exception that it has permitted SAES Getters to "propound one set of 'simple' interrogatories and request for documents." Min. Order Pursuant to Settlement Conference dated May 17, 2002.

### B. Aeronex's Motion for Leave to Amend

Aeronex filed the instant Motion for Leave to Amend on July 12, 2002, attaching its proposed Second Amended Answer, Affirmative Defenses, and Counterclaims ("SAA"). Aeronex alleges that it owns United States Patent Number 6,241,955 (" '955 Patent"). The '955 Patent issued on June 5, 2001, and is entitled "Method and Apparatus for Purification of Hydride Gas Streams." Similar to the '588 Patent, the '955 Patent claims a process (as well as an apparatus) for removing gaseous contaminants from hydride gases. Aeronex's Motion for Leave to Amend initially sought permission to add a counterclaim charging only SAES Getters with "infringing... and/or contributing to or inducing infringement of the '955 patent...." Proposed SAA (Att. to Not. of Mot. for Leave to Am.) ¶ 24.

On July 26, 2002, before SAES Getters filed its opposition to Aeronex's Motion for Leave to Amend, SAES Pure Gas, Inc. ("SPG"), SAES Getters's wholly-owned subsidiary,[2] took action. SPG filed suit against Aeronex in the United States District Court for the Central District of California (the "Central District action"), seeking a declaratory judgment of non-infringement and invalidity of the '955 Patent.[3]

Saes Getters then filed its opposition to Aeronex's Motion for Leave to Amend in this Court three days later, on July 29th. Among other allegations, SAES Getters now contends that SPG, and not SAES, is the true manufacturer of the device that allegedly infringes the '955 Patent.

With its reply brief, Aeronex then submitted a modified version of the proposed SAA. See Decl. Richard Blaylock Supp. Reply Ex. D. The revised proposed SAA adds SPG as a counterdefendant to the counterclaim for infringement of the '955 Patent. (Decl. Richard Blaylock Supp. Reply Ex. D (Second Am. Compl. ¶ 26)).

On August 12, 2002, the date of the hearing of Aeronex's Motion, SAES Getters sought leave to file a surreply via an *ex parte* application. The Court granted the application.

To date, the Court is aware of no motions pending in the Central District action.

### III. STANDARDS OF LAW

### A. Choice Of Law—Motion For Leave To Amend

 In a patent case, a district court is bound by decisions of the United States

---

2. More specifically, Saes Pure Gas, Inc. is a wholly-owned subsidiary of SAES Getters USA, which, in turn, is a wholly-owned subsidiary of SAES Getters, S.p.A. Decl. Howard McClary Supp. Pl.'s Opp. ¶ 1.

3. The case number for the Central District action is 02–05887 DDP (RZx).

Court of Appeals for the Federal Circuit for the determination of all issues except those that are "entirely procedural" and not unique to patent law; with respect to such procedural matters, the Federal Circuit applies the law of the circuit court where appeals from the district court would normally lie. *Atasi Corp. v. Seagate Tech.*, 847 F.2d 826, 829 (Fed.Cir.1988). The Federal Circuit counsels that a motion for leave to amend is one such purely procedural matter. *Senza–Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed.Cir.1986) (applying Ninth Circuit case law). This Court is therefore controlled by Ninth Circuit authority in deciding the merits of Aeronex's Motion for Leave to Amend.

## B. Motion For Leave To Amend To Add Omitted Counterclaim And Counterdefendant

Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend a previously amended pleading "only by leave of court or by written consent of the adverse party." Fed.R.Civ.P. 15(a). In accordance with the Federal Rules' liberal pleading standards, "leave [to amend] shall be freely given when justice so requires." *Id.* Rule 13(f) governs the addition of omitted counterclaims. It provides that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice so requires, the pleader may by leave of court set up the counterclaim by amendment." Fed.R.Civ.P. 13(f). While Rule 13(f) adds additional factors which a court may consider, both the amendment of pleadings and the addition of counterclaims have in common that they are to be permitted "when justice so requires." Thus, courts presented with motions for leave to amend a pleading to add an omitted counterclaim generally "adhere[ ] to the liberal amendment policy of Rule 15" in deciding whether to grant the requested leave. 6 Charles Alan Wright, Arthur R. Miller & Mary

Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1430 at 227 (2d ed.1990); *see Intel Corp. v. Hyundai Elec. Am., Inc.*, 692 F.Supp. 1113, 1117 (C.D.Cal.1987) (in the patent infringement context, finding that identical reasons supported both addition of counterclaims and amendment of pleading).

Rule 13(h) permits joinder of persons not parties to the original action as parties to a counterclaim so long as the provisions of Rules 19 (compulsory joinder) or 20 (permissive joinder) are followed. Fed. R.Civ.P. 13(h). Under Rule 19, a person shall be joined as a party provided he is subject to service of process in the venue where joinder is sought, if joinder will not destroy subject matter jurisdiction, and if the person's joinder is required to accord complete relief among those already parties. Fed.R.Civ.P. 19(a). Under Rule 20, joinder is permissible if the claim against the person arises out of the same transaction or occurrence as that already at issue, and if there is any question of law or fact common to all the parties and persons to be joined. Fed.R.Civ.P. 20(a). Provided those requirements are met, leave to amend to add an adverse party is governed by the general amendment provisions of Rule 15(a). *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 465–466, 120 S.Ct. 1579, 146 L.Ed.2d 530 (2000).

At the outset, then, provided the requirements of Rules 13(f) and 13(h) are met, a court's decision whether to permit amendment of a pleading to add counterclaims or counterdefendants is governed by Rule 15(a).

■ Under Rule 15(a), courts are cautioned to apply the policy of free amendment of pleadings with extreme liberality. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987), *citing United States v. Webb*, 655 F.2d 977, 979 (9th Cir.1981). Though the decision to grant or

deny a motion for leave to amend is governed by the district court's discretion, the general rule is that amendment of pleadings is to be permitted unless the opposing party makes a showing of undue delay, bad faith, undue prejudice, or futility of amendment on the part of the moving party. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The four factors are generally not accorded equal weight; a showing of delay alone, for example, usually will not justify denial of leave to amend. *DCD Programs, Ltd.,* 833 F.2d at 186.

The factors are fairly self-explanatory, but have evolved in the case law as follows. To show undue delay, the opposing party must at least show delay past the point of initiation of discovery; even after that time, courts will permit amendment provided the moving party has a reasonable explanation for the delay. *See Hayes v. New England Millwork Distrib., Inc.,* 602 F.2d 15, 20 (1st Cir.1979) (finding "undue delay" where movant failed to move to amend for two years, after parties had already engaged in and completed discovery, and gave no valid reason for doing so); *DCD Programs, Ltd.,* 833 F.2d at 185, 187 (no undue delay where party moved for leave to amend fourteen months after initial complaint filed). "Bad faith" courts have understood to mean such tactics as, for example, seeking to add a defendant merely to destroy diversity jurisdiction. *Sorosky v. Burroughs Corp.,* 826 F.2d 794, 805 (9th Cir.1987). "Undue prejudice" means substantial prejudice or substantial negative effect; the Ninth Circuit has found such substantial prejudice where the claims sought to be added "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense." *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990). Finally, an amendment is "futile" only if it would clearly be subject to dismissal. *See DCD Programs, Ltd.,* 833 F.2d at 188; *Moore v. Kayport Package Express,* 885 F.2d 531, 542 (9th Cir.1989), *citing Pan–Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 546 (5th Cir.1980). While courts will determine the legal sufficiency of a proposed amendment using the same standard as applied on a Rule 12(b)(6) motion, *see Miller v. Rykoff–Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir. 1988), such issues are often more appropriately raised in a motion to dismiss rather than in an opposition to a motion for leave to amend. William W. Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial* § 8:422.

Ultimately, however, these factors are not to be understood rigidly or applied mechanically; courts are instead counselled to "examine each case on its facts" and gauge the propriety of granting leave to amend accordingly. 6 Charles Alan Wright, et al., *Federal Practice and Procedure: Civil 2d* § 1430 (2d ed.1990).

## IV. ANALYSIS

### A. Threshold Issue: The Operative Proposed Second Amended Answer

Aeronex has submitted two different proposed Second Amended Answers ("SAA"). There is thus a threshold issue of which proposed SAA the Court should consider operative here. The first proposed SAA, submitted with Aeronex's initial motion papers, makes only one change to the First Amended Answer: it adds a counterclaim for infringement of the '955 Patent against SAES Getters only. The revised proposed SAA, submitted with Aeronex's reply papers, makes one additional change: it adds SPG as a counterdefendant to the counterclaim for infringement of the '955 Patent.

The Court accepts the proposed SAA submitted with Aeronex's reply papers as

superseding its initial proposed SAA submitted with its motion papers. At least two reasons support the Court's decision on this issue. First, the addition of SPG as a counterdefendant promptly followed SAES Getters's contention in its opposition brief that SPG, rather than SAES, is the manufacturer of the allegedly infringing product. Second, the Court has accepted SAES Getters's surreply, which counsel for SAES Getters contended had been prepared over the weekend before the hearing for this motion, and thus SAES Getters has had the opportunity to review and oppose the revised proposed SAA.

## B. Motion For Leave To Amend

Aeronex's Motion seeks leave to amend its First Amended Answer to add a third counterclaim for infringement of the '955 Patent, and to add SPG as a Counterdefendant to the third counterclaim, on grounds that "since the filing of its first amended answer, Aeronex has learned that SAES's Micro Torr ammonia gas purifiers infringe the '955 patent." Aeronex's Mem. P. & A. in Supp. at 2.[4]

 The Court finds that Aeronex's motion satisfies the liberal standards for amending a pleading to add an omitted counterclaim under Rules 13(f) and 15(a). The Court also finds that joinder of SPG as a counterdefendant under Rule 13(h) is appropriate here. First, the requirements

of Rule 19(a) are met. The addition of SPG as a counterdefendant will not destroy subject matter jurisdiction. There is no showing that SPG is not subject to personal jurisdiction in this venue.[5] And resolution of the infringement issue against SPG, in this Court's view, is necessary to fully decide the issue of SAES Getters's alleged infringement of the '955 Patent. Alternatively, joinder of SPG is appropriate because the requirements of Rule 20(a) are met. The issue of SPG's infringement arises out of the same transaction as the issue of SAES Getters's infringement of the '955 Patent, and will involve at least one, and likely several, common questions of law or fact.

In sum, the Court finds that Aeronex's motion satisfies the necessary requisites of Rules 13(f) and 13(h). Leave to amend is therefore to be freely permitted in accordance with Rule 15(a) unless SAES Getters can provide adequate grounds for denying Aeronex's motion.

## C. SAES Getters's Opposition

SAES Getters raises a host of issues in opposition to Aeronex's Motion. As the party opposing amendment, SAES Getters bears the burden of showing that there is some reason to deny Aeronex's motion— undue delay, bad faith, undue prejudice, or futility. SAES Getters raises issues that go to the fairness or propriety of permit-

---

4. In the course of the parties' briefing their positions on this motion, SAES Getters contended that SPG is the true manufacturer of the Micro Torr gas purifiers, and that SPG was thus the proper defendant of the '955 infringement claim.

5. A corporation is subject to personal jurisdiction in a particular venue provided that state's long-arm statute authorizes the exercise of such jurisdiction, and if the exercise of such jurisdiction would not offend the Due Process clause of the Fourteenth Amendment. *Rio Prop., Inc., v. Rio Int'l Interlink*, 284 F.3d

1007, 1019 (9th Cir.2002). California has such a long-arm statute, and it permits the exercise of personal jurisdiction to the extent permitted by the Fourteenth Amendment. Cal.Code Civ. P. § 410.10. Under *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the exercise of personal jurisdiction over a corporation is constitutional so long as that corporation has "minimum contacts" with the state where the court sits. Therefore, SPG is subject to the personal jurisdiction of this Court provided it has minimum contacts with this venue.

ting leave to amend, but often does so without connecting those issues to the aforementioned commonly-recognized categories. *See* Pl.'s Opp. to Aeronex's Mot.; Pl.'s Surreply in Opp. to Aeronex's Mot. However, the Court recognizes that in the exercise of its discretion, it may consider additional reasons that would justify denial of leave to amend.

### 1. SAES Getters Is The Wrong Party

■ SAES Getters's first contention is that Aeronex's motion should be denied because the counterclaim it purports to assert names the wrong party as counterdefendant. Pl.'s Opp. at 2. According to SAES Getters, the appropriate party to sue is SPG, which SAES contends is the actual manufacturer of the allegedly infringing products.[6] Thus, contends SAES Getters, it would be futile to permit the addition of the counterclaim for infringement of the '955 Patent.

SAES Getters's argument fails for a number of reasons. The Court first notes that Aeronex has cured any alleged deficiency by seeking in its revised proposed SAA to add SPG as a counterdefendant to the '955 infringement counterclaim.

However, the Court finds that SAES Getters's argument would fail even if SAES Getters were the only counterdefendant to the proposed counterclaim for infringement of the '955 Patent. First, the counterclaim does not allege infringement only by manufacturing. Instead, the counterclaim as it was initially proposed alleged that SAES Getters "is infringing ... and/or contributing to or inducing infringement of the '955 patent." Def. Aeronex's

Not. of Mot. Ex. A (initial proposed SAA ¶ 24). Even if SAES Getters is not the manufacturer, this allegation still would state a claim for relief, because it alleges contributory infringement and inducement of infringement, neither of which theories require a showing of actual manufacture of the device to succeed.

Second, even if the allegation had only charged SAES Getters with infringement by manufacture, to determine the futility of amendment, the Court is required to accept Aeronex's allegations in the proposed SAA as true. *See Miller,* 845 F.2d at 214 (proper test to apply when determining futility of proposed amendment is identical to standard for considering sufficiency of a pleading challenged under Rule 12(b)(6)), *citing* 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[4] (2d ed.1974). Aeronex's initial proposed SAA alleged that SAES Getters is infringing the '955 Patent. Def. Aeronex's Not. of Mot. Ex. A (initial proposed SAA ¶ 24). Plaintiff's opposition contests the truth of this allegation. Such a factual question is more appropriately determined by way of a fully briefed motion or a trial, rather than in the context of a motion for leave to amend. Thus, even assuming SAES Getters had a valid futility argument, the Court would not find it sufficient to support denial of Aeronex's Motion.

### 2. The First–Filed Rule

■ Next, SAES Getters argues that Aeronex's Motion should be denied because the counterclaim it seeks leave to assert is already the subject of the Central

---

6. Aeronex points out that this contention is belied by SAES Getters's own Amended Complaint, which alleges "SAES manufactures gas purifiers using the technology claimed in the '588 Patent in a production facility located in San Luis Obispo, California. This production facility, run by a wholly owned subsidiary called SAES Pure Gas, Inc. ('SPG'), in turn sells the Micro–Torr series of ammonia gas purifiers directly and through distributors to end users." Am. Compl. ¶ 9. Thus, the Amended Complaint characterizes SAES Getters as the manufacturer, and SPG as the seller, of the Micro–Torr gas purifiers. Plaintiff's counsel contends this allegation is a mistake attributable to inartful pleading.

District action, in which SPG is suing for a declaratory judgment of invalidity and non-infringement of the '955 Patent. As discussed above, SPG filed the Central District action on July 26, 2002, some fourteen days after Aeronex filed the instant Motion for Leave to Amend, and just two days before SAES Getters filed its opposition to Aeronex's motion. SAES Getters contends that the Court should not permit Aeronex to add its counterclaim for infringement of the '955 Patent in this Court, because the Central District action is the first-filed action. The Court construes SAES Getters's argument as going to the futility of permitting Aeronex to amend. The issue is thus whether it would be a futile gesture to permit Aeronex to add its counterclaim for infringement of the '955 Patent because the Court will have to dismiss, transfer, or stay its prosecution under the "first-filed rule."

 The first-filed rule is a comity rule for resolving conflicts of jurisdiction where parallel actions are filed in different federal district courts. It provides that where substantially identical actions are proceeding in different courts, the court of the later-filed action should defer to the jurisdiction of the court of the first-filed action by either dismissing, staying, or transferring the later-filed suit. Because the first-filed rule is one that affects "national uniformity in patent practice," this Court's application of it to this case is governed by Federal Circuit authority. *Serco Serv. Co. v. Kelley Co., Inc.*, 51 F.3d 1037, 1038 (Fed.Cir.1995), *citing Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed.Cir.1993). In patent cases, the jurisdictional conflict that typically arises is one between an earlier-filed declaratory relief action for non-infringement, and a subsequently-filed action in another court by the patentee seeking damages for infringement. *See, e.g., id.* at 1038. In such situations, the general rule "favor[s] the forum in which the first suit is filed." *Id.* at 1039.

While the determination of which case was first-filed is a necessary starting point, other considerations come into play in determining which of two parallel patent actions must yield. *See Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183–184, 72 S.Ct. 219, 96 L.Ed. 200 (1952) (affirming reversal of district court's dismissal of later-filed suit under the first-filed rule). Some circumstances, for example, merit giving less than the usual deference to the first-filed action. *See Kleinerman v. Luxtron Corp.*, 107 F.Supp.2d 122, 124–125 (D.Mass.2000). Additionally, courts will permit the subsequently-filed action to proceed where the first one was an anticipatory suit or where forum shopping was the only motive for filing the suit. *See id.* at 124; *Genentech, Inc.*, 998 F.2d at 937–938, *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *Guthy–Renker–Fitness L.L.C. v. Icon Health & Fitness Inc.*, 46 U.S.P.Q.2d 1344, 1346 (C.D.Cal.1998). Courts also may consider the convenience of each forum in determining which suit should proceed. *Genentech, Inc.*, 998 F.2d at 937–938. Ultimately, the district court is to temper its preference for the first-filed suit by yielding to the forum in which all interests are best served. *Id.* at 938.

With these principles in mind, the Court proceeds to determine whether it would be futile to permit Aeronex to add a counterclaim for infringement of the '955 Patent because it would be overriden by the Central District action under the first-filed rule.

### a) Which Action Was Filed First?

To apply the priority rule, the Court must first determine which action was "filed" first: SPG's Central District action,

or Aeronex's counterclaim for infringement of the '955 Patent in this venue. The solution to this puzzle depends on when Aeronex's counterclaim was filed for purposes of the first-filed rule. If Aeronex's motion for leave to amend is the operative filing date, then Aeronex's SAA is the first-filed action. However, if the operative date is the date on which Aeronex is actually given permission to file the SAA pursuant to this Court's order, then the Central District action was filed first. The Court has been unable to find a case that answers the precise question presented here, namely, which date controls for purposes of the first-filed rule—the date on which a party files a motion for leave to amend and add a proposed claim, or the date on which the proposed amendment is actually authorized by the Court.

The Court might be able to disregard the issue if it found that Aeronex's counterclaim related back to the date of its initial answer. Some courts have found a subsequently-filed amendment to predate an earlier-filed action where the amendment related back to a first-filed pleading under Rule 15(c). *See, e.g., Nat'l Foam, Inc. v. Williams Fire & Hazard Control, Inc.,* 1997 WL 700496 (E.D.Pa.1997) (holding that amendment to add new party related back to date of original complaint under Rule 15(c)(3)). However, the Court is not persuaded that it must find that Aeronex's proposed counterclaim will relate back to the date of its initial answer in order to conclude that the counterclaim was first-filed.[7]

Instead, the Court finds that Aeronex's counterclaim for infringement of the '955 Patent has priority over the Central District action for purposes of the first-filed rule, not because it relates back to the date of Aeronex's first answer, but because Aeronex filed its Motion for Leave to Amend before SPG filed its declaratory relief action. Several considerations lead the Court to this conclusion. First, a number of courts have concluded that the first-filed forum is the one in which the parties originally were brought, not the one in which the precise issue was first raised. *See* 8 Donald S. Chisum, *Chisum on Patents* § 21.02[4][b] n. 11. In other words, the forum with priority is the one where the parties initially sued each other, even if the parties raise a different claim in a subsequently filed suit in a different forum. *Mattel, Inc. v. Louis Marx & Co., Inc.,* 353 F.2d 421, 424 (2d Cir.1965). In *Mattel,* this was the sequence of events: 1) in the District of New Jersey, Marx sued Mattel for a declaratory judgment of non-infringement and invalidity of trademark; 2) in the Southern District of New York, Mattel sued Marx for trademark infringement *and patent infringement;* 3) in the District of New Jersey action, Marx amended its complaint as of right to add a count for declaratory relief of non-infringement of the patent. *Id.* at 422–423. The court held that the New Jersey suit was the prior action even as to the patent infringement claim, because it "was the first to bring both parties into court, and the Marx complaint, as amended ..., included identical issues...." *Id.* at 424. Under this reasoning, this action is the first filed simply because it was the first to bring Aeronex and SAES Getters into court, and because as amended, this action will address all the parties and issues raised in the Central District action.

---

7. SAES Getters makes a number of arguments that Aeronex's counterclaims for infringement of the '955 Patent will not relate back to the date of Aeronex's initial answer. *See* Pl.'s Surreply at 2–5. Because the Court does not base its application of the first-filed rule on the relation-back doctrine, nor does the Court make any finding herein regarding whether Aeronex's counterclaims relate back, the Court does not address the merits of SAES Getters's arguments about relation back.

Second, the Court believes that the date on which Aeronex filed its motion for leave to amend should control for purposes of the first-filed rule, rather than the date on which Aeronex's proposed SAA is actually filed. This result is technically accurate: the proposed SAA was filed as an exhibit to Aeronex's Notice of Motion before SPG filed the Central District action. The first-filed rule looks at which party technically won the race to the courthouse, and the Court believes that this conclusion is consistent with the rule's technical outlook: Aeronex won the race to the courthouse when it filed its Motion for Leave to Amend. Although the initial motion sought only to add a counterclaim against only SAES Getters, and not SPG, the initial proposed SAA was still sufficiently similar to the Central District action to be a parallel action for purposes of the first-filed rule.

In sum, the Court holds that Aeronex's counterclaim for infringement of the '955 Patent has priority over the Central District action for purposes of the first-filed rule.

### b) Dispositive Weight Of The First–Filed Rule In This Case

Even if this Court were to hold that the Central District action is technically the first to be filed, that fact would be of little weight in the circumstances presented here. SAES Getters contends in its surreply that SPG filed the Central District action upon seeing a press release by Aeronex that it was seeking to sue SAES Getters for patent infringement. Pl.'s Surreply at 1. The press release SAES Getters refers to actually reports that Aeronex had filed the instant Motion for Leave to Amend (Pl.'s Surreply Ex. 1), which SAES Getters presumably knew

about before seeing the press release. At the hearing for this Motion, Counsel for SAES Getters (who, incidentally, is also counsel for SPG in the Central District action) represented that SAES Getters and SPG first received notice that Aeronex might sue them for patent infringement from Aeronex's instant Motion for Leave to Amend. Counsel also stated that SPG essentially sought to choose a different forum for deciding the issue of infringement of the '955 Patent, and for that reason it attempted to beat Aeronex in the race to the courthouse by filing its declaratory relief claims in a separate suit in the Central District.

Again, if the Court were to find that SPG's Central District action was technically first, such a race to the courthouse would constitute a victory at the outset for SPG. That victory, however, would be a hollow one indeed. In patent cases, where "1) the patentee notifies an alleged infringer of suspected infringement, 2) good faith negotiations ensue and 3) the alleged infringer then files a declaratory judgment action in another forum, a subsequently-filed action by the patentee in the nature of patent infringement filed within a reasonable time after the first action is entitled to some deference and [ ] the 'first-filed rule' will not be dispositive." *Kleinerman*, 107 F.Supp.2d at 124–125. In *Kleinerman*, the alleged infringer was notified of the potential suit by letter from the patentee's counsel. Here, where SPG was notified of the potential suit by a motion for leave to amend in a prior-filed action, the "first-filed rule" is of even less dispositive weight. At most, then, SPG's victory would entitle its action in the Central District to only a small head-start in determining whether this action should be permitted to proceed.[8]

---

8. SAES Getters's counsel claimed during oral argument that "Plaintiff's choice of forum is entitled to great weight" as an additional rea- son for deferring to SPG's choice of the Central District as the forum for resolution of

In sum, even if the Court were to find that SPG technically won the race to the courthouse, that fact would be of little dispositive value here in deciding whether the issue of the '955 Patent infringement should be tried here or in the SPG action.[9]

### c) Other Equitable Considerations

The Court finds there is another important consideration that weighs in favor of retaining jurisdiction over Aeronex's counterclaims against SAES Getters and SPG. The Court has thoroughly reviewed both the '588 Patent owned by SAES Getters and the '955 Patent owned by Aeronex. Just a cursory glance over both patents reveals that they are markedly similar. Both patents claim to provide a method for purifying gases, and both use what appears to be a similar method for doing so. The Court believes that it will be important for the consistent interpretation of these two similar patents to have one court, rather than two, interpret them. Having a single court conduct the *Markman* hearings for both patents will ensure that the court is familiar with all the potential overlap (if any) in the claims made by the two patents. Furthermore, if the issues related to both patents are presented to one court, the parties can raise any issues of invalidity stemming from the relationship between the two patents before a court which will be well-versed in the technology presented by both patents. Thus, by bringing both patent claims be-

fore one court, the possibility of inconsistent judgments should be substantially minimized, if not removed.

The Court finds that the importance of ensuring that the '588 and '955 Patents are interpreted consistently, in addition to the economy of having all issues related to both patents presented to a single court, weighs very strongly against deferring to the Central District action. The claims based on infringement of the '588 Patent are not before the Central District court. Thus, the only way that the claims related to both patents will be heard by a single judge is if this Court retains jurisdiction of Aeronex's counterclaims for infringement of the '955 Patent. The Court believes that retaining jurisdiction over the counterclaims so that both "dueling" patents can be adjudicated together is precisely the sort of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" that supports proceeding in this venue. *Kerotest Mfg. Co.*, 342 U.S. at 183–184, 72 S.Ct. 219.

### d) Convenience Of The Parties

SAES Getters contended in oral argument that the Central District is a more convenient forum than the Southern District for SPG to adjudicate claims related to the '955 Patent. Its reason is that SPG's manufacturing facility is located in San Luis Obispo, which the Court esti-

---

the '955 Patent infringement claims. That policy of according weight to Plaintiff's choice of forum is not a determinative one, and is particularly unconvincing here. "A court is not bound by a party's forum choice, particularly when the party filed a declaratory judgment action to attempt to get the 'paramount right to choose the forum for trying out questions of infringement and validity.'" *Owens–Illinois Glass Container Inc. v. B & H Mfg. Inc.*, 13 U.S.P.Q.2d 2061, 2064 (E.D.Cal. 1989), *quoting Kerotest Mfg. Co.*, 342 U.S. at 185, 72 S.Ct. 219.

9. The Court is aware that counsel for SPG's admission that SPG essentially filed an anticipatory suit in the Central District in an effort to secure the forum of its choice provides the Court with grounds for finding at least one exception to the first-filed rule. *See Guthy–Renker–Fitness L.L.C.*, 46 U.S.P.Q.2d at 1346 (listing anticipatory suit filed for the purpose of forum shopping as exception). However, since other, more affirmative equitable considerations exist to find that proceeding with this case is appropriate, the Court declines to find inappropriate forum shopping by SPG.

mates to be some 80 miles north of Los Angeles, where the SPG action is filed. While the Court can imagine that it will likely be less convenient for certain witnesses, documents, and exhibits to travel to San Diego, which is roughly another 120 miles to the south of Los Angeles, the Court finds that this factor does not warrant deferring to the jurisdiction of the Central District. *See Mattel, Inc.*, 353 F.2d at 424 ("Newark is as convenient a forum as New York for a California corporation with its principal offices in Los Angeles"). The distance is simply not great enough to persuade the Court that the Southern District is an inconvenient forum.

**e) Customer Suit Exception**

■ Next, SAES Getters argues that even if the Court rules that Aeronex's counterclaims are first filed, that the "customer suit exception" to the first-filed rule applies. Pl.'s Surreply at 5–6. Under the customer suit exception, a "second-filed action may be given priority if the first action involves secondary parties, such as a customer of the accused manufacturer, and the second action involves the primary parties to the patent dispute." 8 Donald S. Chisum, *Chisum on Patents* § 21.02[4][c] at 21–207. SAES Getters contends that it is merely a customer of its wholly-owned subsidiary SPG, and that SPG's Central District action should therefore be given priority if Aeronex is permitted to amend.

Even if the Court were to accept SAES Getters's contention that it is a mere customer of SPG, its argument is foreclosed by Aeronex's revised proposed SAA, which includes SPG as a Counterdefendant.

■ However, the Court additionally finds that the customer suit exception would not apply here even if SPG were not included as a party. "The customer suit exception is based on the manufacturer's presumed greater interest in defending its

actions against charges of patent infringement; and to guard against possibility of abuse." *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed.Cir.1989). Because the exception is based on a presumption of greater interest, it follows that the exception may fail if the presumption on which it relies is disproved.

The Court finds that the presumption of the manufacturer's greater interest is dispelled by the facts of this case. Here, SPG is a wholly-owned subsidiary of SAES Getters USA, which in turn is a wholly-owned subsidiary of SAES Getters, S.p.A. in Italy. SAES Getters cannot, therefore, be labeled a truly secondary party with a lesser interest in defending charges of patent infringement. Additionally, SAES Getters's ownership of a patent similar to Aeronex's '955 Patent increases its interest in invalidating or otherwise disputing issues related to the '955 Patent.

SAES Getters also contended at oral argument that adherence to corporate formality requires the Court to find it is SPG's customer. The Court is well aware of the importance of corporate structure but is also aware that the "customer suit exception" was made with particular assumptions about customers and manufacturers in mind. The Court is not convinced that the purposes of the "customer suit exception" would be served where the purported "customer" is also the owner of the owner of the manufacturer.

In sum, the Court finds that Aeronex's revised proposed SAA moots any contention that the Central District action has priority under the customer suit exception. And even if the initial proposed SAA were the operative amended pleading, the Court finds that the customer suit exception would not apply to the facts of this case.

**f) Conclusion**

The Court finds that Aeronex's counterclaims against SAES Getters and SPG for

infringement of the '955 Patent were "filed" for purposes of the first-filed rule when Aeronex filed its Motion to Amend. Therefore, the counterclaims preceded SPG's declaratory relief action in the Central District.

Even if the Court were to find the SPG action was first-filed, that fact would be of little dispositive weight under the circumstances of this case. The important concerns of consistently interpretating of the '588 and '955 Patents and of judicial economy warrant proceeding with Aeronex's counterclaims here. And this forum does not appear to the Court to be so inconvenient to SPG, in light of the closeness of San Diego to Los Angeles, so as to weigh in favor of deferring to the SPG action in the Central District. Finally, the customer suit exception to the first-filed rule does not apply here.

In sum, the Court finds that the first-filed rule does not warrant this Court's declining to exercise jurisdiction over this action in deference to the SPG action. Therefore, Aeronex's proposed amendments are not futile.

### 3. Undue Prejudice

■ Next, SAES Getters contends that Aeronex's proposed amendments will create confusion and prejudice to SAES Getters. Pl.'s Opp. at 3–4. SAES argues that the addition of an "entirely new patent lawsuit" here "relating to a different patent with claims [sic]" would "be extremely prejudicial," "would unnecessarily delay the trial and would likely be very confusing to the trier of fact." *Id.* at 3.

The Court disagrees that SAES Getters will be prejudiced by the addition to this case of Aeronex's counterclaims. Where a party opposes a motion for leave to amend on the basis of undue prejudice, the showing of prejudice must be substantial. *See Morongo Band of Mission Indians*, 893 F.2d at 1079 (affirming denial of motion

for leave to amend where new claims posed a "radical shift in direction" of the litigation, were "tenuous" at that, and where moving party failed to request leave to amend for nearly two years).

The Court recognizes that Aeronex's amendment will add another patent to this case. However, the Court does not believe that this addition will prejudice SAES Getters. As the Court explained during oral argument, it anticipates no additional delay because of Aeronex's counterclaims. The Court is not persuaded that a case involving two patents is any more confusing to a jury than the innumerable patent cases filed dealing with technology far more complex than that involved in this case. Finally, the Court believes any concerns about the difficulty of trying issues related to two patents in a single case are overcome by the economy of trying two patents at once, and even more importantly, by the importance of ensuring that the patents are interpreted in a consistent manner.

In sum, the Court finds that SAES Getters will not be prejudiced by Aeronex's addition to this suit of counterclaims for infringement of the '955 Patent.

### 4. Bad Faith

■ SAES Getters makes two arguments about Aeronex's supposed bad faith in attempting to file these counterclaims. First, it contends that Aeronex fails to show that it "was unaware of the alleged infringement at the time it filed its amended answer and counterclaims in May 2002...." Pl.'s Opp. at 5. Even if this contention is true, it does not show bad faith on the part of Aeronex. A party need not immediately sue for patent infringement at the first moment it becomes aware of the alleged infringement; instead, the usual course is to attempt to resolve such disputes informally and settle

them without the need for formal litigation. Indeed, the failure to sue immediately can be an indication of *good* faith. *See Kleinerman,* 107 F.Supp.2d at 124 (discussing common sequence of events where patentees and alleged infringers typically engage in "good faith negotiations" before filing suit). In this case the parties worked on settlement for over two months with the magistrate court, which suspended discovery to facilitate the settlement process. Therefore, Aeronex's failure to file its counterclaims in May 2002, even if it were aware of its potential infringement claims then, does not amount to bad faith.

Second, SAES Getters argues that Aeronex has acted in bad faith by "delaying the settlement process by refusing to sign an 'off the record' stipulation for almost a month, and then not respondeding [*sic* ] to Plaintiff's settlement offer which was submitted weeks ago." Pl.'s Opp. at 5.[10] The Court does not view this contention as showing that Aeronex has acted in bad faith in filing this motion. To oppose a motion for leave to amend on grounds of bad faith, a party must show "sharp practice" tactics such as, for example, seeking to add a defendant merely to destroy diversity jurisdiction. *Sorosky,* 826 F.2d at 805. SAES Getters's arguments essentially complain about Aeronex's tactics with respect to other pieces of this litigation, but do not establish that Aeronex has acted in bad faith in filing its Motion for Leave to Amend. The Court finds no bad faith on the part of either side to the litigation at the present time.

### 5. Rule 13(f)/ Rule 15(a) Issue

SAES Getters contends that Aeronex's motion should be denied because it was filed under Rule 15(a). According to SAES, the proper procedure for adding an omitted counterclaim is to file a motion under Rule 13(f). Pl.'s Surreply at 2–3. SAES cites the Sixth Circuit case *Stoner v. Terranella,* 372 F.2d 89 (6th Cir.1967), in which the court held that Rules 13(f) and 15(a) are mutually exclusive, for this proposition.

SAES argument fails. First, *Stoner* is a strongly disfavored case whose reasoning has been criticized as making "little sense." 6 Charles Alan Wright, et al., *Federal Practice and Procedure: Civil 2d* § 1430 (2d ed.1990). Instead, a motion under both rules is appropriate where a party seeks to amend a pleading to add an omitted counterclaim.[11] And courts "generally have adhered to the liberal amendment policy of Rule 15" in deciding whether to add omitted counterclaims. *Id.* Therefore, SAES Getters's contention that Aeronex improperly filed its motion under Rule 15(a) fails.

### 6. The '955 Patent's Alleged Invalidity

■ Next, SAES Getters contended at oral argument that Aeronex's proposed amendment is futile because the '955 Patent is invalid. According to SAES, the allegedly infringing devices were being manufactured before Aeronex was issued the '955 Patent. Therefore, SAES argues,

---

10. The Court notes that SAES Getters's contentions in its brief are not "evidence," and thus could not be accepted by the Court as evidence of Aeronex's bad faith even if the arguments were meritorious. *Senza–Gel Corp.,* 803 F.2d at 667.

11. Although Aeronex failed to cite Rules 13(f) (or Rule 13(h), for that matter) in its motion, the Court is satisfied that the requirements of

those rules have been met. *See supra* at ——; *Cosden Oil & Chem. Co. v. Foster Grant Co., Inc.,* 432 F.Supp. 956, 960 (D.Del.1977) (permitting addition of claim to case "[r]egardless of whether it is properly termed a supplemental or amended pleading" and rejecting opposing party's arguments that the amendment should have been rejected for failure to rely on the appropriate rule).

by contending that the devices infringe the '955 Patent, Aeronex essentially admits that its patent is invalid because of anticipation.

The Court finds that SAES Getters's argument does not establish the futility of Aeronex's proposed amendment. To determine the futility of amendment, the Court is required to accept Aeronex's allegations in the proposed SAA as true. *See Miller*, 845 F.2d at 214 (proper test to apply when determining futility of proposed amendment is identical to standard for considering sufficiency of a pleading challenged under Rule 12(b)(6)), *citing* 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[4] (2d ed.1974). While SAES Getters may have a valid affirmative defense of invalidity to Aeronex's counterclaim, the merits of this defense are more appropriately determined by way of a fully briefed motion, rather than through counsel's contention during oral argument.

### 7. Undue Delay

Finally, SAES Getters contended during oral argument that Aeronex's Motion should be denied because it was unduly delayed.

Aeronex's initial answer was filed in the Northern District on February 5, 2002. This motion was filed on July 12, 2002. Little, if any, discovery has been exchanged in this case. The Court is aware of no case that has held the passing of five months, particularly where no other proceedings have taken place in the interim, to constitute undue delay. *See DCD Programs, Ltd.*, 833 F.2d at 187 (14–month delay insufficient to warrant denial of motion to amend). And even if it were undue delay, that factor alone is insufficient to warrant denial of the Motion under the totality of circumstances of this case. *Id.*

### D. Conclusion

The Court finds that Aeronex's Motion for Leave to Amend is well taken, and that SAES Getters fails to carry its burden of showing that Aeronex's Motion should not be granted.

## V. DISPOSITION

Aeronex's Motion for Leave to Amend First Amended Answer, Affirmative Defenses, and Counterclaims is hereby GRANTED. Aeronex's proposed Second Amended Answer, submitted as Exhibit "D" attached to the Declaration of Richard L. Blaylock in Support of Aeronex's Reply, shall be filed by the clerk forthwith.

IT IS SO ORDERED.